IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PRG-SCHULTZ USA, INC., a Georgia corporation,<br><br>    Plaintiff,<br><br>  v.<br><br>GOTTSCHALKS, INC., a Delaware corporation,<br><br>    Defendant. / | No. C 05-2811 MMC<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER VENUE; VACATING HEARING**<br><br>(Docket No. 14) |

Before the Court is defendant Gottschalks, Inc.'s ("Gottschalks") motion, filed September 14, 2005, to transfer the above-titled action from the Northern District of California ("Northern District") to the Eastern District of California ("Eastern District"), pursuant to 28 U.S.C. § 1404(a). Plaintiff PRG-Schultz USA, Inc. ("PRG") has filed opposition to the motion, to which Gottschalks has replied. Having considered the papers submitted in support of and in opposition to the motion, the Court finds the motion appropriate for decision without oral argument, see Civil L.R. 7-1(b), and hereby VACATES the hearing scheduled for October 21, 2005. For the reasons set forth below, the motion is GRANTED.

**BACKGROUND**

In the instant action, PRG seeks damages for breach of a written agreement,

entered into June 24, 2003 ("Audit Agreement"), by which PRG agreed to perform an audit of Gottschalks' store real estate leases in exchange for thirty to thirty-five percent of all monies recovered, credits received, or savings recognized from the audit. (See Compl. ¶ 1.) PRG alleges that although Gottschalks has recovered payments from its landlords as a result of PRG's audit, Gottschalks has failed to pay PRG all of the fees owed to PRG pursuant to the parties' Audit Agreement. (See id.)

PRG is a Georgia corporation with its principal place of business in Atlanta, Georgia. (See Pitts Decl. ¶ 2.) PRG alleges that it is in the business of recovery auditing, which, it states, is the process of reviewing disbursement transactions and related supporting data to identify and recover overpayments and under-deductions. (See Compl. ¶ 2.)

Gottschalks is a Delaware corporation, with its corporate headquarters located in Fresno, California.[1] (See Bradshaw Decl. ¶ 2.) According to PRG, Gottschalks is a retail department store chain with approximately 74 department stores and 17 specialty stores located throughout California, Washington, Alaska, Idaho, Oregon and Nevada. (See Compl. ¶ 3.)

PRG alleges that, pursuant to the Audit Agreement, PRG agreed to conduct an audit of Gottschalks' store real estate leases in order to determine whether Gottschalks had overpaid under any of the leases. (See id. ¶ 8.) PRG further alleges that the Audit Agreement entitled it to receive 30% of any recovery up to $200,000, and 35% of any recovery over $200,000. (See id. ¶ 11.)

PRG alleges it commenced the audit through its contractor, Occupancy Cost Audit Group ("OAG"), in July 2003. (See id. ¶ 14.) PRG further alleges that as a result of the audit performed on the Lease Agreement for Manchester Center ("Manchester Center Lease"),[2] Gottschalks recovered $7,151,045, of which PRG's share, under the Audit Agreement, was $2,502,866. (See id. ¶ 23.) PRG also alleges that Gottschalks recovered

---

[1] Fresno is located in the Eastern District.

[2] Manchester Center is located in Fresno, California. (See Jacobson Decl. ¶ 7.)

2

$333,476 in miscellaneous overcharges relating to other leases,[3] of which PRG's share, under the Audit Agreement, was $116,717.  (See id. ¶¶ 17, 21, 23.)

On September 30, 2003, PRG alleges, Gottschalks's general counsel served PRG with a 60-day cancellation notice of the Audit Agreement.  (See id. ¶19.)  PRG further alleges that Gottschalks, in the cancellation notice, stated that it intended to honor the Audit Agreement and that it would compensate PRG when and if it ultimately received compensation for the overcharges identified by PRG.  (See id.)  PRG contends that although it has sent Gottschalks repeated demands for payment, Gottschalks has not paid PRG the amounts due PRG under the Audit Agreement.  (See id. ¶ 22.)

PRG asserts causes of action against Gottschalks for breach of contract, breach of the covenant of good faith and fair dealing, and an accounting.

**LEGAL STANDARD**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness."  Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22 (1988) (internal quotation and citation omitted).  In determining whether to transfer venue pursuant to § 1404(a), the court may consider factors such as "(1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum; (5) the contacts relating to the plaintiff's cause of action in the chosen forum; (6) the differences in the costs of litigation in the two forums; (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof."  See Jones v. GNC Franchising, Inc., 211

---

[3] The miscellaneous overcharges relate to leases for stores in Soldotna, Alaska; West Valley Mall in Tracy, California; Burien, Washington; Crossroads Mall in the state of Washington; and Lake Forest Park in the state of Washington.  (See Compl. ¶ 17; see also Jacobson Decl. ¶ 7.)

F.3d 495, 498-99 (9th Cir. 2000).

## DISCUSSION

Gottschalks seeks an order transferring the instant action to the Eastern District, arguing that the Eastern District is a more convenient forum than the Northern District.[4]

**A. The Case Could Have Been Brought in the Eastern District**

As noted, a district "may transfer any civil action to any other district or division where it might have been brought." See 28 U.S.C. § 1404(a).  It is undisputed that venue is appropriate in the Eastern District, pursuant to 28 U.S.C. § 1391(a) and (c), because a substantial portion of the events giving rise to the complaint occurred in Fresno, California, and Gottschalks's corporate headquarters are located there.  (See Bradshaw Decl. ¶ 5(B).)  Thus, the instant action "might have been brought" in the Eastern District.

**B.  The Convenience of the Parties and Witnesses**

Gottschalks submits evidence that it expects eleven current or former employees to testify on its behalf concerning the Audit Agreement, the Manchester Lease, Gottschalks's lease administration, and the results of the audits conducted by PRG.  (See Bradshaw Decl. ¶ 4(A-K).)  Of these witnesses, ten reside in the Eastern District, and one, a former employee, resides in Texas.  (See id.)  Additionally, Gottschalks identifies six non-party witnesses it expects to testify.  (See id. ¶ 4(L-Q).)  Two of those witnesses reside in the Eastern District, three reside in the state of Washington, and one resides in Alaska.  (See id.)

PRG submits evidence that it expects to call at least three current employees to testify about the negotiation of the Audit Agreement and its enforcement.  (See Pitts Decl. ¶ 7.)  One of those witnesses works for PRG in Atlanta; PRG does not identify the residence or workplace of the other two employee witnesses.  (See id. ¶¶ 6-7.)  PRG also expects to call three OAG employees to testify about the audits done by OAG on behalf of PRG.  (See id. ¶¶ 9-11; see also Jacobson Decl. ¶ 4.)  Of the three OAG witnesses, one resides in

---

[4] Gottschalks does not argue that venue is improper in the Northern District.

4

southern California, and the other two work in southern California and presumably reside there as well.  (See Jacobson Decl. ¶¶ 4-5.)  Additionally, PRG expects to call a Los Angeles attorney who represented U.S. Mall Holdings, the landlord of Gottschalks's Manchester Center location, who is expected to testify as to the amount recovered by Gottschalks from U.S. Mail Holdings as a result of PRG's audit.  (See Pitts Decl. ¶ 12.)

None of the potential witnesses identified by the parties is located in the Northern District.  Twelve witnesses, including two non-party witnesses, are located in the Eastern District and would not need to travel if the Court were to grant the motion to transfer.  The remainder of the witnesses are located distant from both the Northern and Eastern Districts and would have to travel if the case were litigated in either venue.

PRG's argument that transferring the case to the Eastern District would merely shift the inconvenience from Gottschalks to PRG is unpersuasive.  Were the case to remain in San Francisco, all witnesses would have to travel long distances to trial; it is an inconvenient venue for all witnesses.  By contrast, a transfer to the Eastern District would eliminate the need for numerous witnesses to travel, including two non-party witnesses.

Accordingly, the Court finds this factor weighs in favor of transfer.

**C.  The Location Where the Relevant Agreements Were Negotiated and Executed**

Another relevant factor in determining whether to transfer venue is "the location where the relevant agreements were negotiated and executed."  See Jones v. GNC Franchising, Inc., 211 F.3d at 498-99.  PRG attests that it executed the Audit Agreement in Atlanta, and that Gottschalks executed the Audit Agreement in Fresno.  (See Pitts Decl. ¶ 3).  Fresno, as noted, is located in the Eastern District.

Accordingly, this factor weighs in favor of transfer.

**D.  The State That Is Most Familiar with the Governing Law**

The second of the Jones factors is "the state that is most familiar with the governing law."  See Jones v. GNC Franchising, Inc., 211 F.3d at 498-99.  The parties do not address this factor, and the Court notes that the Audit Agreement does not include a choice of law

5

clause. (See Pitts Decl. Ex. A.) As both the Northern District and the Eastern District are equally familiar with California law, and equally unfamiliar with the law of any other state, however, this factor favors neither party.

### E. The Plaintiff's Choice of Forum and the Contacts Relating to the Plaintiff's Cause of Action in the Chosen Forum

The third and fifth of the Jones factors are "the plaintiff's choice of forum" and "the contacts relating to the plaintiff's cause of action in the chosen forum." See Jones v. GNC Franchising, Inc., 211 F.3d at 498-99. Generally, the Court accords special weight to the plaintiff's choice of forum and the defendant "must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." See Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986). The plaintiff's choice of forum is not a dispositive factor, however, in considering a motion to transfer. See, e.g., Stewart Organization v. Ricoh Corp., 487 U.S. 22, 31 (1988) (citing Norwood v. Kirkpatrick, 349 U.S. 29, 32 (1955)). Indeed, a plaintiff's choice of forum is given "much less weight" when the plaintiff is not a resident of the chosen forum or the forum lacks any significant contact with the activities alleged in the complaint. See William W Schwarzer, A. Wallace Tashima, James M. Wagstaffe, Federal Civil Procedure Before Trial, § 4:761 (2005) (citing New Image, Inc. v. Travelers Indem. Co., 536 F.Supp. 58, 59 (E.D. Pa. 1981) and Chrysler Capital Corp. v. Woehling, 663 F. Supp. 478, 482 (D. Del. 1987)); see also Bryant v. ITT Corp., 48 F.Supp.2d 829, 832 (N.D. Ill. 1999); cf. Piper Aircraft v. Reyno, 454 U.S. 235, 255-56 (1981) (holding, in discussing doctrine of forum non conveniens, that plaintiff's choice of forum "deserves less deference" when plaintiff has chosen not to sue in its home forum).

As noted, PRG is a Georgia corporation with its principal place of business in Atlanta. (See Compl. ¶ 2.) There is no allegation that any of the events giving rise to the instant action took place in the Northern District. It is undisputed, on the other hand, that much of the work PRG performed pursuant to the Audit Agreement was performed in the Eastern District. (See Bradshaw Decl. ¶ 5(B).)

Consequently, the Court finds PRG's choice of forum is entitled to little deference, and that the lack of contacts relating to the plaintiff's cause of action in the chosen forum, coupled with the existence of such contacts in the Eastern District, favors transfer to the Eastern District.

### F.  The Respective Parties' Contacts with the Forum

The fourth of the Jones factors is "the respective parties' contacts with the forum." See Jones v. GNC Franchising, Inc., 211 F.3d at 498-99.  There is no showing that PRG has any contacts with the Northern District.  Although Gottschalks has at least four retail locations in the Northern District, in particular, stores in Antioch, Danville, Santa Rosa, and Scotts Valley, (see Oh Decl. ¶ 2 and Ex. A), there is no evidence that any of Gottschalks's Northern California stores are involved in any way in the instant litigation.

By contrast, it is undisputed that Gottschalks's corporate headquarters are located in the Eastern District, and, as noted, that much of the work PRG performed pursuant to the Audit Agreement was performed in the Eastern District.

Accordingly, the fourth Jones factor weighs in favor of transfer.

### G.  The Differences in the Costs of Litigation in the Two Forums

The sixth of the Jones factors is "the differences in the costs of litigation in the two forums."  See Jones v. GNC Franchising, Inc., 211 F.3d at 498-99.  Neither party has submitted any evidence that the cost of litigation will differ at all, let alone significantly, depending on whether the instant matter is heard in the Northern District or the Eastern District.  Accordingly, the sixth factor weighs in favor of neither party.

### H.  The Availability of Compulsory Process to Compel Attendance of Unwilling Non-party Witnesses

The seventh of the Jones factors is "the availability of compulsory process to compel attendance of unwilling non-party witnesses."  See Jones v. GNC Franchising, Inc., 211 F.3d at 498-99.  As noted, the parties have identified non-party witnesses in the Eastern District, Texas, Washington, Alaska, and southern California.  The non-California witnesses are outside the subpoena power of the Court and cannot be subpoenaed for trial regardless

of whether the action is litigated in the Northern District or the Eastern District. See Fed. R. Civ. P. 45((c)(3)(A)(ii). The California witnesses are all within the subpoena power of the Court and can be subpoenaed for trial in either the Northern District or the Eastern District. See id.

Accordingly, this factor weighs in favor of neither party.

### I. The Ease of Access to Sources of Proof

The final Jones factor is "the ease of access to sources of proof." See Jones v. GNC Franchising, Inc., 211 F.3d at 498-99. Gottschalks argues that the Eastern District is more convenient because Gottschalks stores many of the pertinent documents at its corporate headquarters and at the Manchester Center location, both of which are located in the Eastern District. (See Motion at 5; see also Bradshaw Decl. ¶ 5(A).) PRG submits evidence that its records of payments received by Gottschalks are maintained in southern California. (See Jacobson Decl. ¶ 6.) The parties do not identify any documents or other sources of proof that are located in the Northern District.

Neither party contends, however, that any of the relevant records are so voluminous that it would difficult to transport them as needed. See Reed Elsevier, Inc. v. Innovator Corp., 105 F.Supp.2d 816, 822 (S.D. Ohio 2000) (noting that "location of documents will rarely weigh in favor of transfer because documents may be easily photocopied and shipped to wherever the documents are needed").

Accordingly, this factor weighs in favor of neither party.

### J. Administrative Difficulties Flowing From Court Congestion

The Ninth Circuit has identified "administrative difficulties flowing from court congestion" as another factor relevant to determining whether to grant a motion to transfer pursuant to § 1404(a). See Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d at 843. PRG points out that judges in the Eastern District have a higher case load than judges in the Northern District, and that cases take longer to get to trial in the Eastern District than in the Northern District. (See Oh Decl. ¶ 3 and Ex. B). In particular, in 2004, judges in the Eastern District had an average of 895 cases per judge compared to 519

pending cases per judge in the Northern District, while civil cases in the Eastern District took an average of 27.5 months to get to trial, compared to 22.5 months in the Northern District.  (See id.)

Accordingly, this factor weighs against transfer.

**K.  Summary**

In sum, the most probative of the factors discussed above weigh in favor of transferring the instant action to the Eastern District.  The only factor that weighs in favor of denial is the slightly longer average time for civil cases to get to trial in the Eastern District.  The Court finds that single factor is outweighed, however, by the Eastern District's connection to the events giving rise to the instant action and to at least one of the parties, as well as many of the witnesses, and that there are no contacts with or connection of any type to the Northern District.

Accordingly, the Court finds that the relevant factors weigh in favor of transferring the action to the Eastern District.

**CONCLUSION**

For the reasons stated above, Gottschalks's motion to transfer the instant action to the Eastern District of California is hereby GRANTED.

The Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: October 17, 2005

MAXINE M. CHESNEY
United States District Judge